BERYL KINROSS-WRIGHT v. VERNON KINROSS-WRIGHT.

(Filed 19 March, 1958)

**1. Divorce and Alimony § 16½—**

A judgment in an action for divorce allowing alimony, or a judgment in an action for alimony without divorce, does not terminate the action, but such action remains pending for motions for modification or enforcement of the provisions for alimony, and the jurisdiction of the court over the parties continues for the purpose of such motions upon notice without service of new process, even though neither party is a resident of this State at the time of service of such notice.

**2. Judgments § 18:   Courts § 2—**

Once the jurisdiction of a court attaches, it exists for all time until the cause is fully and completely determined.

**3. Courts § 2:   Divorce and Alimony § 16½—**

A decree for alimony which provides that the husband should pay, in addition to a stipulated sum per month, a designated percentage of his gross income above a certain sum, is not affected by the fact that the husband thereafter moves to a state having a community property law under which half of his earnings belong to his wife and remarries, since such decree is governed by and must be interpreted in accordance with the laws of the state rendering it.

**4. Divorce and Alimony § 11—**

The amendment to G.S. 50-11 by the 1955 Session Laws is not applicable to decrees for alimony rendered prior to the effective date of the statute.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Williams, J.,* at March 1957 Civil Term, of DURHAM.

Civil action for allowance of alimony without divorce pursuant to provisions of G.S. 50-16, heard March 5 and 6, 1957, upon petition of defendant for modification and clarification of judgment of *Martin, S. J.,* dated 3 September, 1953, as No. 669 at Fall Term 1957, and carried over to Spring Term 1958.

Upon the conclusion of the hearing the parties agreed that the court might take all matters in controversy under advisement, and make findings of fact and conclusions of law, and render judgment thereon out of term and out of the district.

And "upon the admissions in the pleadings, the evidence adduced by the parties upon the hearing and stipulations of counsel, and the record, the court" made findings of fact and conclusions of law and upon facts found and conclusions of law, entered judgment as follows:

"FINDINGS OF FACT

"1. * * * The original summons was issued under date of February 13, 1952, and at that time, both plaintiff and defendant were residents of Durham County, North Carolina.

"2. * * * under date of March 5, 1952 an interlocutory order for subsistence and counsel fees was entered herein by Honorable R. Hunt Parker, Judge presiding.

"3. The cause came on for final hearing before Honorable Grover A. Martin, Judge presiding, on September 3, 1953, at which time a jury trial having been waived, the court found the facts to be as alleged in plaintiff's complaint and entered judgment awarding subsistence and counsel fees to the plaintiff and awarding plaintiff custody of the minor children born of the marriage. No exceptions were noted to this judgment by either party and there was no appeal taken therefrom.

"4. The material portions of said judgment of September 3, 1953, now in controversy, are contained in the numbered paragraphs thereof, which read as follows:

'1. That defendant pay to the plaintiff on or before the first day of each and every calendar month hereafter, beginning September 1, 1953, the minimum sum of $250.00 or 20% of his gross income, whichever is greater, for the support and maintenance of herself.

'2. That defendant pay to the plaintiff on or before the first day of each and every calendar month hereafter, beginning September 1, 1953, the minimum sum of $50.00 for each child, or 5% of his gross

income for each child, whichever is greater, for the support and main-
tenance of each of the two children born of the marriage of plaintiff
and defendant.

'3. That defendant shall furnish to plaintiff on or before the first
day of April of each year, beginning April 1, 1954, a true copy of his
Federal Income Tax Return for the preceding calendar year, au-
thenticated by a certified public accountant, lawyer or other person
preparing same for defendant, and if defendant's gross income, with-
out adjustments, as shown on said tax return for the preceding year
exceeds the sum of $14,000, a sum equal to 20% of the excess over
$14,000 divided by 12, shall be added to each monthly payment due
plaintiff under paragraph 1 above, for the next ensuing 12 months, be-
ginning with the first day of April of the then current year, and a
sum equal to five percent of such excess divided by 12, shall be added
to each monthly payment due plaintiff for each child under paragraph
2 above, for the next ensuing 12 months beginning with the first day
of April of the then current year. It is the intent of this paragraph
to provide for the payment to the plaintiff of any deficiency which
may be found to exist in favor of plaintiff and the children when
the amounts due them under paragraphs 1 and 2 for the year in
question, are calculated on a percentage of gross income basis, as
set forth in said paragraphs, and all sums paid under this paragraph
shall be considered in discharge of the remainder of defendant's obli-
gation for the previous year only.'

"5. Following the entry of the aforesaid judgment, the plaintiff
instituted an action against the defendant in the Superior Court of
Durham County, N. C., on October 30, 1953, for an absolute divorce
upon the grounds of two years separation; the defendant accepted
service of summons in said action * * * and filed a verified answer
therein * * * admitting all of the allegations of the complaint. The
action was tried * * * and upon affirmative answers by the jury to
the issues submitted by the court, judgment of absolute divorce was
entered on said date, * * * Said judgment contained the provision
that 'this judgment be entered without prejudice to the rights of the
plaintiff and her minor children under the terms of that certain judg-
ment entered in an action pending in this court entitled "Beryl Kin-
ross-Wright v. Vernon Kinross-Wright," dated September 3, 1953 and
signed by Hon. Grover A. Martin, Judge presiding, which said judg-
ment shall remain in full force and effect.'

"6. The defendant had requested plaintiff to bring an action against
him for absolute divorce; he knew that the aforesaid action com-
menced on October 30, 1953, was to be instituted before the summons
was in fact filed; and he agreed to and later paid all court costs and

attorneys' fees in connection therewith.

"7. The defendant moved his residence from Durham, North Carolina, to Houston, Texas, in January of 1953, and following the entry of the aforesaid absolute divorce decree, in November of 1953, the defendant married one Marjorie Stout on December 19, 1953. The plaintiff, Beryl Kinross-Wright, has not re-married.

"8. The terms incorporated in the judgment entered herein, dated September 3, 1953, had been the subject of correspondence between the defendant, his attorney and plaintiff's attorney prior to the entry of said judgment, and under date of July 29, 1953, defendant wrote to his attorney and told him that he agreed to paragraphs 1, 2 and 3 of the judgment. Defendant also said in this letter:

'This would mean, as I understand it, that my wife gets $250 per month and my children $100 per month. When my gross income rises above $14,000, my wife and children together get a straight 30%. This would mean, for example, that if my gross income rose to $20,000, my family would get $6,000 per annum, which would be a marked increase.'

"9. Following the entry of said judgment of September 3, 1953, defendant commenced making the payments due thereunder, and for the remainder of the year 1953, beginning as of September 1, 1953, defendant paid to the plaintiff the minimum aggregate sum of $350 due under paragraphs 1 and 2 of said judgment.

"10. During the year 1954, defendant paid to plaintiff the minimum aggregate sum of $350 each month due under paragraphs 1 and 2 of said judgment. Defendant also complied with the remaining requirements of said judgment with respect to life insurance policies and payment of counsel fees.

"11. During the year 1955, defendant paid to plaintiff the minimum aggregate sum of $350 each month, payable under the provisions of paragraphs 1 and 2 of said judgment, and some time prior to September 13, 1955, defendant mailed to plaintiff a certified copy of his Federal Income Tax Return for the taxable year 1954, which showed that defendant's gross income, without adjustments, for the year 1954 was $20,808.34. Defendant deducted from this figure the sum of $6,221.69 for business expenses, leaving a total of $14,586.65, or an excess of $586.65 over $14,000. Thirty percent of this excess was $175.99 of which defendant paid to the plaintiff the sum of $102.69, representing 7/12th of the amount already accrued, according to defendant's calculation, over and above the $350 per month minimum payments, which were made in the year 1954. Defendant

thereafter, acting upon advice of counsel, declined to make any further payments to the plaintiff other than the minimum sums set forth in paragraphs 1 and 2 of the judgment, and has made no such payments to this date.

"12. Defendant's gross income, without adjustments for the year 1955, was in amount of $25,698.78.

"13. The plaintiff is a British subject and is not an American citizen. She returned to her former home in London, England, in June 1954, taking with her the two children born of the marriage of plaintiff and defendant, and she has resided there ever since. Plaintiff has applied for a visa on which to return to United States and has testified that she intends to return to this country about August of 1957; that she will bring the children with her; and that she intends that all of them shall become American citizens.

"14. The defendant is a naturalized American citizen and resides in Houston, Texas. He is employed by the School of Medicine of Baylor University at a salary of approximately $13,000 per year. Defendant is a licensed physician, specializing in psychiatry, and in addition to his duties with Baylor University, he practices his profession for his own account from which he realizes a gross income of at least $12,000 to $13,000 annually. Defendant is furnished an office and secretary by Baylor University, and he is reimbursed for certain travel expenses which he is required to make in connection with his profession and employment. Defendant incurs certain other expenses in connection with his profession which are not reimbursed. For the year 1954, he deducted from his gross income of $20,808.34, the sum of $6,221.69 for business expenses for purposes of his Federal Income Tax Return, leaving a balance of $14,586.65 as his net income after adjustments. For the tax year 1955 defendant deducted from his gross income of $25,698.78, the sum of $7,578.36 for business expenses, leaving a net income, after adjustments, as shown on his income tax return for that year, in the amount of $18,120.42.

"15. By his second wife, the former Marjorie Stout, the defendant has one child, Elizabeth Kinross-Wright, who was born January 28, 1956. Defendant's present wife is a qualified psychologist, and at the times under consideration here, 1954 and 1955, she was gainfully employed.

"16. Defendant made a general appearance in this action under date of February 20, 1957, and filed a 'Petition for Modification and Clarification' of the aforesaid judgment of September 3, 1953, contending that in view of the 1955 Amendment to G.S. 50-11, plaintiff is no longer entitled to payments of alimony in any amount under

said judgment; that in any event, the court should exercise its discretion to relieve defendant of any further payments for her own support and maintenance thereunder; that in the alternative, that the term 'gross income' as used in said judgment be re-defined to exclude expenditures made in the ordinary course of petitioner's practice as a physician and not to include income which, under the community property laws of Texas, will be the income and property of his wife; that the date on which defendant is required to furnish a certified copy of his income tax return to plaintiff be changed from April 15th to May 15th; and that the court grant the defendant such further modification and clarification of said judgment as it may deem just and equitable.

"17. The plaintiff filed a demurrer to defendant's said petition under date of March 1, 1957; alleging that this court is without jurisdiction to modify or clarify the former judgment; that the 1955 Amendment to G.S. 50-11 does not affect said judgment; and that defendant's petition does not allege his financial inability to comply with the judgment nor that the plaintiff and the minor children awarded support and maintenance payments thereunder are not in need of same.

"18. Under date of February 21, 1957, plaintiff made a general appearance in this action and filed her petition alleging the failure of the defendant to comply with the judgment of September 3, 1953, with respect to the payment of 30% of his gross income in excess of $14,000 annually, and asked that the court ascertain the amount due plaintiff by defendant under said decree and that the defendant be required to pay reasonable counsel fees to plaintiff's attorney for services rendered subsequent to September 3, 1953, and that judgment be rendered therefor.

"19. On the date scheduled for the hearing on the aforesaid petitions, March 5, 1957, defendant filed a special appearance and motion to dismiss plaintiff's petition, alleging that this court is without jurisdiction to consider the same and grant the relief sought for the reason that plaintiff is no longer a resident of North Carolina nor of the United States; that the defendant is a resident of Texas; that the children of the marriage are no longer domiciled in North Carolina; and that the judgment of absolute divorce obtained by plaintiff in November 1953, bars any further action by the plaintiff in this cause. Thereafter, and on the same date, March 5, 1957, defendant filed answer to plaintiff's said petition, denying the material allegations thereof and renewing his prayer for relief as set forth in his own petition for modification and clarification.

"20. Plaintiff and defendant were each properly served with notice of the hearing to be held herein on March 5, 1957, and each appeared in person with counsel at the hearing.

"21. The matter of the custody of the two minor children born of the marriage of plaintiff and defendant is not in controversy in this proceeding. The defendant was granted the right and privilege to visit with said children at all reasonable times both in the interlocutory and final decrees entered herein. Plaintiff has never denied defendant this right of visitation. Defendant did not avail himself of this privilege, however, between the time he moved to Houston, Texas in Jan. of 1953 and June 1954 when plaintiff returned with the children to her home in England. Defendant knew that plaintiff contemplated taking the children back to England, and he raised no objection to this. Defendant writes to the children on their birthdays and at Christmas, and he sends them each a check for $20.00 on their birthdays and at Christmas making a total of $40.00 a year for each of them.

"22. Because of the lower living costs, plaintiff and the two children are able to maintain a higher standard of living in England on the $350.00 per month which defendant has been paying pursuant to the judgment of September 3, 1953, but the $100.00 per month allocated in said decree for the support and maintenance of the children is not adequate for their support, and plaintiff spends the greater portion of all the money paid to her for the support of the children. Plaintiff is not employed, and she feels that she should devote her time to the care of the children.

"23. Defendant has not alleged nor offered any evidence tending to show that he is not financially able to comply with the terms of the judgment of September 3, 1953, and there is no evidence before the court to show that the amounts required to be paid under said judgment are unreasonable nor unnecessary to support the plaintiff and the children in a manner commensurate with defendant's station in life.

"24. Defendant's gross income without adjustments for the year 1954 was $20,808.34; the excess of this sum over $14,000 was $6,808.34 and thirty percent of this latter figure was $2,042.50. Defendant paid to plaintiff $102.69 of this amount leaving a balance of $1,939.81, no part of which has been paid.

"25. The excess of defendant's gross income without adjustments ($25,698.78) over $14,000 for the year 1955 was $11,698.78; thirty percent of this latter figure was $3,509.63, no part of which has been paid by defendant to the plaintiff.

"26. The defendant in failing to pay the balances set forth in the two immediately preceding paragraphs acted in good faith and upon advice of counsel, and defendant is not in willful contempt of this court.

"27. Since the rendition of the judgment of September 3, 1953, the date for filing Federal income tax returns has been changed from March 15th to April 15th.

"28. Since September 3, 1953 plaintiff's attorneys, Dupree, Weaver & Montgomery of Raleigh, North Carolina, have rendered valuable services to plaintiff in connection with this litigation, said services consisting of voluminous correspondence, legal research, extended negotiations with defendant's counsel, preparation of pleadings, conferences with plaintiff, attendance upon hearings and preparations of legal briefs. Said services have required at least 24 days, and the court finds the reasonable value thereof to be $1200.00. Plaintiff's counsel have also incurred out-of-pocket expenses in this connection for such items as telephone, photo-copying, travel and transcript of testimony in the amount of $82.40."

Upon the foregoing findings of fact the court made the following:—

"CONCLUSIONS OF LAW

"1. This court has jurisdiction of the persons of plaintiff and defendant.

"2. The jurisdiction of this court having attached at a time when both plaintiff and defendant were residents of Durham County, North Carolina, and the action in its nature being one of which continuing jurisdiction is exercised, such jurisdiction was not thereafter divested by the removal of the parties from Durham County.

"3. The fact that the plaintiff is a non-resident alien does not divest the court of jurisdiction.

"4. The judgment of September 3, 1953 directed payment of money by the defendant to the plaintiff and he thereupon became indebted to the plaintiff as the installments came due. When the defendant became in arrears in the payment of the installments, this court on plaintiff's application has the right judicially to determine the amount due and enter its judgment accordingly.

"5. The judgment of September 3, 1953 was not affected by the 1955 amendment to G.S. 50-11 nor by the decree of absolute divorce obtained by plaintiff on November 9, 1953.

"6. The judgment of September 3, 1953 is to be construed accord-

ing to the laws of North Carolina and without regard to the community property laws of the State of Texas where defendant now resides.  .

"7. Paragraphs 1, 2 and 3 of said judgment are to be construed in the light of the circumstances of the parties as of the date of its rendition unaffected by any change in the marital status or residence of the parties subsequent to that date.

"8. Paragraphs 1 and 2 of said judgment require payment by defendant to plaintiff of a total of thirty percent of his gross income for support of plaintiff and the minor children, but a minimum payment of $350.00 per month in any event. Paragraph 3 of the judgment provides the method by which defendant's gross income may be ascertained and when the percentage payments of the excess of the gross income over $14,000 are to be paid. This paragraph must be read in the light of the circumstances of the parties as of the time of the rendition of the judgment unaffected by any subsequent change in defendant's marital status or the community property laws of Texas.

"9. When said judgment is so construed, it follows that the defendant is indebted to plaintiff in the amount of the unpaid balance of thirty percent of the excess of his gross income over $14,000 for the year 1954, or $1,939.81, with interest thereon from March 1, 1955, the date on which the last installment of said indebtedness became due; and defendant is indebted to plaintiff in the amount of thirty percent of the excess of his gross income over $14,000 for the year 1955, or $3,509.63 with interest thereon from March 1, 1956, the date on which the last installment of said indebtedness became due.

"10. Defendant is not entitled under his pleadings nor under the law to any retrospective modification of the judgment of September 3, 1953 as to any amount already accrued and due thereunder, nor as to the method of ascertaining same, but plaintiff is entitled to judgment therefor to be enforceable by the issuance of execution.

"Upon the basis of the foregoing conclusions of law it is now

"ORDERED, ADJUDGED AND DECREED as follows:

"1. That the plaintiff's (sic defendant's) petition for modification and clarification filed herein under date of February 20, 1957 be, and the same is hereby denied as a matter of law and in the discretion of the court, and that plaintiff's demurrer thereto be and the same is hereby sustained.

"2. That defendant's special appearance and motion to dismiss filed

herein under date of March 5, 1957 be and the same is hereby overruled.

"3. That pursuant to her petition filed herein under date of February 21, 1957 that plaintiff have and recover of the defendant the sum of $1,939.81 with interest thereon at the rate of six percent per annum from March 1, 1955; that plaintiff have and recover of the defendant the sum of $3,509.63 with interest at six percent per annum thereon from March 1, 1956; and that plaintiff have and recover of the defendant the costs of this action accrued to the date of entry of this judgment which costs shall include the sum of $1200.00 payable to Dupree, Weaver & Montgomery, attorneys for plaintiff, for services rendered and the sum of $82.40 payable to Dupree, Weaver & Montgomery, attorneys for plaintiff in reimbursement of out-of-pocket expenses incurred by said attorneys in connection with this litigation.

"4. That this judgment be enforceable by the issuance of execution, but said remedy shall be without prejudice to any other remedies available to plaintiff under the laws of this or any other State for the enforcement hereof."

Defendant excepts to certain findings of fact and to certain conclusions of law, and to the rendition and signing of judgment, and appeals to Supreme Court and assigns error.

*Dupree & Weaver, for Plaintiff, Appellee.*

*M. Michael Gordon, of the Texas Bar, Everett, Everett & Everett for Defendant, Appellant.*

WINBORNE, C. J.: In the light of the facts found as hereinabove set forth, appellant, defendant, states in brief filed herein, as involved on this appeal, several questions, among which are:

1. "Was it within the court's jurisdiction and discretion to entertain this litigation?" The answer is "Yes". See *Barber v. Barber,* 216 N.C. 232, 4 S.E. 2d 447; *Finance Co. v. Trust Co.,* 213 N.C. 369, 196 S.E. 340; *Land Bank v. Davis,* 215 N.C. 100, 1 S.E. 2d 350; *Barber v. Barber,* 217 N.C. 422, 8 S.E. 2d 204.

In the first *Barber* case, *supra,* this Court said: "An action in court is not ended by the rendition of a judgment, but in certain respects it is still pending until the judgment is satisfied * * * Motion affecting the judgment but not the merits of the original controversy may be made in the cause * * * This is particularly true of judgments allowing alimony in divorce actions and in actions for alimony without divorce, in which it may not be said that the judgment is in all respects final * * * Such actions are always open for motions in the cause to determine the amount of arrearage and to obtain the remedies per-

mitted by statute for the enforcement of the order for alimony. It was not required that a new summons be served upon the defendant. Notice of motion under the statute was sufficient. This notice was duly served."

The Court continues: "It appears from this record, as stated, that the defendant is in court and is subject to its jurisdiction, on notice to hear and determine motions in the cause. Want of jurisdiction of the court in such matters may not be challenged by special appearance. The right of the plaintiff to make the motion may not be thus questioned."

Indeed the second *Barber* case, *supra*, establishes that the proper procedure for recovering arrears in alimony payments is by motion in the cause. The Court there held that "An order for the payment of alimony is *res judicata* between the parties, but is not a final judgment, since the court has the power, upon application of either party, to modify the orders for changed condition of the parties."

Defendant, however, contends that the *Barber* cases are not controlling because the wife there was still a resident of North Carolina. This would not seem to make a difference. For once jurisdiction of a court attaches it exists for all time until the cause is fully and completely determined. See *Michigan Trust Co. v. Ferry*, 228 U.S. 346, 33 S. Ct. 550 57 L. Ed. 867, where Justice Holmes, writing for the Court, stated: "Ordinarily jurisdiction over a person is based on the power of the sovereign asserting it to seize that person and imprison him to await the sovereign's pleasure. But when that power exists and is asserted by service at the beginning of a cause, or if the party submits to the jurisdiction in whatever form may be required, we dispense with the necessity of maintaining the physical power, and attribute the same force to the judgment or decree whether the party remain within the jurisdiction or not. This is one of the decencies of civilization that no one would dispute."

2. Did the court err in holding that Texas Community Property Law has no applicability, even though defendant has been a Texas resident since January 1953? While there seems to be a paucity of decided cases on this subject, appellee cites and relies upon two cases involving property settlement agreements incident to divorce actions which reject the applicability of the Community Property Law. They are (1) *Alexander v. Alexander*, 64 F. Supp. 123, affirmed 158 F. 2d, 429, Cert. Den. 330 U.S. 845, 67 S. Ct. 1086, 91 L. Ed. 1290; Headnote 3 in 158 F. 2d, 429, epitomizes the opinion there. It is this: "Where defendant was required by a Missouri separation agreement, approved by a divorce decree, to pay plaintiff a percentage of defendant's annual gross income in excess of a specified amount, and defendant thereafter remarried and moved to Texas, where one-half

of the earnings of a husband belong to wife, defendant could not invoke Texas law to reduce his gross income by one-half in computing amount due plaintiff under agreement and all computations were required to be made under Missouri law."

The Court speaking thereto had this to say: "This being a Missouri contract, it must be presumed that when the parties used the term 'gross income' they meant and understood 'gross income' as that term is understood in Missouri and under Missouri law there can be no doubt what appellant's income was, for instance in 1943, under the Missouri law had he remarried in Missouri * * *.

"Of course, he could go to Texas, but when he did he did not take the contract with him. It remained in Missouri, so to speak, a Missouri contract subject to Missouri law, and subject to the interpretation under that law. His removal to Texas did not change a Missouri contract into a Texas contract. His obligations under the contract still depended under the law of Missouri, the place where the contract was made. When he executed this contract in Missouri, he fixed his liability under the canopy of the Missouri law, and he remains thereunder until the performance of the contract is completed."

The provisions of the separation there are strikingly similar to the judgment in the present case in that it provided that the defendant supply a copy of the income tax return for the purpose of computing defendant's gross income.

The second case is *Arthur v. Arthur* (California) 305 P. 2d, 171, where the husband was to pay a percentage of his "earnings". Headnote 1 reflects the ruling of the Court: "In property settlement agreement making the 'earnings' of the husband the measuring stick by which to determine amount to be paid for support of wife and children, quoted word was used to indicate amount produced, and not what might be left after deducting community interest of husband's second wife."

The reasoning in these two cases, *Alexander v. Alexander, supra,* and *Arthur v. Arthur, supra,* appears to be sound, and may well be applied with approval to the factual situation in the instant case.

3. Another question is this: "Was the court free to disregard the 1955 amendment to G.S. 50-11?" An affirmative answer to this question is found in the case of *Rayfield v. Rayfield,* 242 N.C. 691, 89 S.E. 2d 399, opinion by *Parker, J.* It is stated that "The amendment to G.S. 50-11 by the General Assembly in 1955 Session Laws, Chapter 872, by its express language, is not applicable to defendant's judgment for subsistence rendered in 1941." It is noted that the amendment became effective January 1, 1956. And in instant case the judgment was rendered in 1953. Hence the amendment is inapplicable here. See also *Yow v. Yow,* 243 N.C. 79, 89 S.E. 2d 867.

All authorities cited and relied upon by appellant have been considered.

Moreover, other questions raised by appellant have been duly considered, and do not appear to present new principles. Hence express treatment of them in this opinion is not deemed necessary.

For reasons stated the judgment from which appeal is taken is Affirmed.

PARKER, J., took no part in the consideration or decision of this case.