In The Matter Of: L.O.K., J.K.W., T.L.W., and T.L.W.

No. COA04-1684

(Filed 15 November 2005)

**1. Termination of Parental Rights— second petition after first voluntarily dismissed—not barred**

DSS was not barred from filing a second petition to terminate parental rights after voluntarily dismissing its first petition. The Rules of Civil Procedure apply only when they do not conflict with the Juvenile Code and only to the extent that the Rules advance the purposes of the Legislature expressed in the Juvenile Code.

**2. Termination of Parental Rights— bench trial—hearsay—no showing of prejudice**

Assuming that testimony in a termination of parental rights proceeding was inadmissible hearsay, respondent did not carry her burden of showing that the trial court relied on the incompetent evidence in making its findings.

### 3. Termination of Parental Rights— findings of neglect— sufficient

Findings that children had been neglected and that there was a probability of repetition if the children were returned to respondent's custody were sufficient to establish neglect. Furthermore, the trial court's conclusion that grounds existed for termination is supported by the court's findings establishing that respondent failed to maintain contact with her children for extended periods of time. N.C.G.S. § 7B-1111(a)(1).

### 4. Termination of Parental Rights— hearing—poor audio re- cording—no showing of prejudice

Respondent in a termination of parental rights hearing failed to show prejudice from a poor audio recording of the hearing where the record contains no indication that respondent made any attempt to reconstruct the missing material or that she was in any way unable to do so.

Appeal by respondent from order entered 7 July 2004 by Judge Philip W. Allen in Alamance County District Court. Heard in the Court of Appeals 17 August 2005.

*Jamie L. Hamlett for petitioner-appellee.*

*Sophie W. Hosford for respondent-appellant.*

GEER, Judge.

The respondent mother appeals the trial court's order terminating her parental rights to her four minor children, L.O.K., T.L.W., T.L.W., and J.K.W.[1] Respondent argues primarily that Rule 41(a)(1) of the Rules of Civil Procedure required that the trial court dismiss the petition to terminate her parental rights because the Alamance County Department of Social Services ("DSS") had dismissed a prior petition after having rested its case. Because we hold that this aspect of Rule 41(a)(1) does not apply in proceedings to terminate parental rights and because respondent's remaining assignments of error are without merit, we affirm.

Respondent did not specifically assign error to any of the trial court's 109 findings of fact apart from a general statement that the

---

1. For the purposes of this opinion, we refer to the older T.L.W. as "T.W." and the younger T.L.W. as "T.L.W." Respondent has a fifth child who is not involved in this appeal.

**IN RE L.O.K., J.K.W., T.L.W., & T.L.W.**

[174 N.C. App. 426 (2005)]

trial court's conclusions of law are not supported by clear and convincing evidence. It is, however, well established that a "broadside exception that the trial court's conclusion of law is not supported by the evidence, does not present for review the sufficiency of the evidence to support the entire body of the findings of fact." *In re Beasley*, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). In the absence of a specific assignment of error, a trial court's findings of fact are deemed to be supported by competent evidence and are conclusive on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").

In this case, the trial court's findings of fact in its order terminating respondent's parental rights and the findings in prior unchallenged orders establish the following facts. At the time of the termination hearing, L.O.K. was 12 years old, T.W. was 10 years old, T.L.W. was 8 years old, and J.K.W. was 6 years old. L.O.K. had not seen respondent for at least three years prior to the hearing, while the other three children had not seen respondent for at least two years.

L.O.K. and T.W. were first taken into custody by DSS on 17 March 1995. On 18 May 1995, the trial court determined that L.O.K. and T.W. were neglected children. The mother stipulated that (1) L.O.K. had unexplained cigarette burns on his leg, (2) respondent's husband had sliced L.O.K. on his neck and hand, (3) the husband threatened L.O.K., (4) respondent violated a protection plan in which she agreed not to leave her children alone with her husband, and (5) respondent had failed to enforce a domestic violence protective order. Subsequently, the court attempted a trial placement with respondent: L.O.K. was returned to his mother's home on 16 August 1996, while T.W. was returned on 20 December 1996. On 19 January 1997, however, both children were again removed because respondent's husband was still living with the family despite the domestic violence protection order prohibiting respondent's husband from entering the home.

T.L.W., who was approximately a year old, was also adjudicated as neglected on 24 April 1997. On 23 October 1997, the trial court entered an order directing DSS to cease efforts to reunify the three children with their parents. At a subsequent permanency planning hearing, however, the trial court determined that L.O.K.'s father had received an active prison term, respondent had secured a divorce

IN RE L.O.K., J.K.W., T.L.W., & T.L.W.

[174 N.C. App. 426 (2005)]

from him and had not seen him in a year, and the threat of danger from her inability to protect the children no longer existed. The trial court, therefore, entered an order on 2 November 1998 requiring DSS to resume reunification efforts.

On 23 December 1998, L.O.K., T.W., and T.L.W. were again placed with their mother. Respondent quit her job the next day, with the result that she had four children (including another baby, J.K.W.) in her home with no income. Respondent did not contact DSS to request assistance or otherwise seek help with food stamps or daycare. The children were removed on 8 January 1999 because respondent was "in a distressed emotional state" and DSS was concerned for the children's safety and welfare.

At a review hearing on 19 April 1999, the trial court ordered weekend visitation between respondent and the children. Because of conditions observed during the weekend visitation on 26 July 1999, DSS obtained non-secure custody of the approximately year-old J.K.W. "due to the environmental conditions of the home not being safe for the four juveniles to remain at the residence."

On 8 November 1999, DSS attempted a trial placement of J.K.W. with respondent. On 9 December 1999, respondent failed to pick J.K.W. up from daycare and did not check on the welfare of J.K.W. until 10:00 p.m. that evening. J.K.W. was placed back into foster care. The following morning, respondent told the DSS social worker that she could not bring herself to pick up her child from daycare, that she could no longer care for J.K.W., and that she would sign a voluntary relinquishment of parental rights to her four children. She did not, however, ever follow through on the voluntary relinquishment. J.K.W. was adjudicated to be a neglected child on 3 January 2000.

On 21 January 2000, respondent agreed to a visitation schedule for J.K.W. On 11 February 2000, however, respondent was 30 minutes late for her visit and was not truthful regarding her reason for being late. On 21 February 2000, respondent also failed to appear for a permanency planning hearing. The trial court, therefore, entered an order ceasing reunification efforts. DSS filed a petition for termination of parental rights on 24 August 2000.

In February 2001, when respondent became pregnant with her fifth child, she moved to "Room at the Inn" in Greensboro, a home for single and expectant mothers. At that time, DSS spoke to respondent for the first time in several months and asked why she had not kept

in contact with DSS. When respondent indicated that she did not think she needed to keep in touch, the DSS social worker explained that it was necessary in order to indicate that she was making an effort to regain her children and to allow DSS to assist in providing services. While at "Room at the Inn," respondent progressed into "Partnership Village," a facility for integrating homeless people into society and received training in medical office technology at Guilford Technical Community College. Respondent ultimately had a paying job at "Room at the Inn" and had her own apartment, automobile, and the use of a cell phone.

From February 2001 until 16 June 2002, respondent maintained "some contact" with the DSS social worker. A hearing on DSS' petition to terminate respondent's parental rights was held on 26 February 2002, 27 February 2002, and 1 March 2002. After DSS rested its case and while respondent was presenting her case, DSS voluntarily dismissed the petition.

In July 2002, respondent left "Room at the Inn" for Cleveland, Ohio. She did not, however, leave a forwarding address or telephone number. After learning from others that respondent might have moved to Ohio, DSS made numerous efforts to locate her, including sending letters and copies of court orders to respondent's relatives in Ohio. On 15 October 2002, DSS filed a second petition for termination of parental rights.

DSS finally located respondent in January 2004 through Child Support Parent Locator services. From January 2004 until the termination hearing, respondent declined to make further contact with DSS except for a telephone conversation on 1 April 2004. In that telephone conversation, DSS reminded respondent that it was okay for her to send the children cards and letters. While respondent had on one occasion after January 2001 provided DSS with cards for her children and she had delivered a second card for L.O.K. in May 2002, she sent no cards or letters from July 2002 through the date of the termination hearing. During that period, respondent also failed to make contact with the children's foster parents to inquire about the condition of the children; failed to send the children any gifts; and failed to attend permanency planning and review hearings of which she had knowledge.

In Ohio, respondent first lived with her sister. She obtained employment at McDonald's for three months. After at least eight months of unemployment, respondent then began working at Wal-Mart.

**IN RE L.O.K., J.K.W., T.L.W., & T.L.W.**

[174 N.C. App. 426 (2005)]

Although respondent testified that she had a car and childcare, she provided no further details and DSS was unable to verify any of her living and working arrangements.

Following hearings on 26-27 April 2004, 29 April 2004, 5 May 2004, 7 May 2004, and 2 June 2004, the trial court entered an order on 7 July 2004 terminating respondent's parental rights to L.O.K., T.W., T.L.W., and J.K.W. The trial court denied respondent's motions to dismiss (filed as to each child), in which she contended that the second petition was barred by DSS' dismissal of the first petition. The court determined that grounds for termination existed as to each child, concluding (1) that respondent had neglected each child and (2) that respondent had willfully left each child in foster care for more than 12 months without showing reasonable progress under the circumstances in correcting the conditions that led to the removal of the children. Respondent filed notice of appeal from that order on 12 July 2004.

I

[1] Respondent first argues that the trial court erred in denying her motions to dismiss. Respondent contends that under Rule 41(a)(1), DSS could not voluntarily dismiss without prejudice the first petition for termination of parental rights since it had already rested its case. According to respondent, DSS was required, at that point, to obtain a court order declaring that the dismissal was without prejudice and that DSS' failure to do so barred the second petition. *See Pardue v. Darnell*, 148 N.C. App. 152, 157, 557 S.E.2d 172, 176 (2001) (holding that when the plaintiffs took a voluntary dismissal after resting their case and without seeking a voluntary dismissal from the court under Rule 41(a)(2), it "was a voluntary dismissal with prejudice, barring them from refiling suit against defendant"). We disagree.

The General Assembly has set out the judicial procedure to be used in juvenile proceedings in Chapter 7B of the General Statutes. *See* N.C. Gen. Stat. § 7B-100 (2003) ("This Subchapter shall be interpreted and construed so as . . . (1) To provide procedures for the hearing of juvenile cases."). This Court has previously held that "[t]he Rules of Civil Procedure, while they are not to be ignored, are not superimposed upon these hearings." *In re Allen*, 58 N.C. App. 322, 329, 293 S.E.2d 607, 612 (1982). Instead, the Rules of Civil Procedure apply only when they do not conflict with the Juvenile Code and only to the extent that the Rules advance the purposes of the legislature as expressed in the Juvenile Code. *Compare In re D.L.*, 166 N.C. App.

574, 577, 603 S.E.2d 376, 379 (2004) ("[w]here the relevant juvenile statute [was] silent," the court applied N.C.R. Civ. P. 5(a), regarding methods of service, to termination proceedings), *with In re J.N.S.*, 165 N.C. App. 536, 539, 598 S.E.2d 649, 650-51 (2004) (summary judgment is "implicitly prohibit[ed]" by the Juvenile Code because it conflicts with the court's obligation to hear the evidence and make findings of fact under N.C. Gen. Stat. § 7B-1109(e) (2003)), *and In re Tyner*, 106 N.C. App. 480, 483, 417 S.E.2d 260, 261 (1992) (a default judgment may not be entered against a parent because it would require termination "even when the facts do not support termination and thereby permit termination inconsistent with the best interests of the child").

To hold that a dismissal of a petition for termination of parental rights precludes a second petition, as defendant urges here, would be "contrary to the procedural mandate set forth in our juvenile code." *J.N.S.*, 165 N.C. App. at 539, 598 S.E.2d at 651. N.C. Gen. Stat. § 7B-1109(e) requires that the trial court "take evidence, find the facts, and . . . adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of the respondent" in the best interests of the child. As this Court held in *J.N.S.* and *Tyner*, such a conflict precludes application of a rule of civil procedure.

Further, N.C. Gen. Stat. § 7B-201 (2003) provides: "When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first." *See also In re Arends*, 88 N.C. App. 550, 554, 364 S.E.2d 169, 171 (1988) (" '[O]nce jurisdiction of a court attaches it exists for all time until the cause is fully and completely determined.' " (quoting *Kinross-Wright v. Kinross-Wright*, 248 N.C. 1, 11, 102 S.E.2d 469, 476 (1958))). Applying Rule 41 to preclude subsequent petitions for termination cannot be reconciled with this continuing jurisdiction.

Finally, our General Assembly has stressed in the Juvenile Code that the "best interests of the juvenile are of paramount consideration." N.C. Gen. Stat. § 7B-100(5). *See also In re Pittman*, 149 N.C. App. 756, 761, 561 S.E.2d 560, 564 ("[T]he common thread running throughout the Juvenile Code, § 7B-100 *et seq.*, is that the court's primary concern must be the child's best interest."), *appeal dismissed and disc. review denied*, 356 N.C. 163, 568 S.E.2d 608-09 (2002), *cert. denied*, 538 U.S. 982, 155 L. Ed. 2d 673, 123 S. Ct. 1799 (2003). When

**IN RE L.O.K., J.K.W., T.L.W., & T.L.W.**

[174 N.C. App. 426 (2005)]

it is not in the juvenile's best interest to be returned home, the juvenile must "be placed in a safe, permanent home within a reasonable amount of time." N.C. Gen. Stat. § 7B-100(5). *See also* N.C. Gen. Stat. § 7B-1100(1) (2003) (The General Assembly "recognize[s] the necessity for any juvenile to have a permanent plan of care at the earliest possible age.").

Allowing a voluntary dismissal of one petition to preclude the filing of a second petition would be antithetical to a child's best interests because it would result in no permanent plan of care for the child. If termination of parental rights could be foreclosed by Rule 41, children who could not be returned to their parents would be stranded indefinitely in the foster care system. Here, the children have already spent much of their childhood in foster care: at the time of the termination hearings, L.O.K. and T.W. had been in foster care for nine years, T.L.W. for seven years, and J.K.W. for five years. The children are entitled to a permanent plan of care that cannot be foreclosed by Rule 41.

Accordingly, we hold that DSS was not barred from filing a second petition to terminate parental rights after voluntarily dismissing its first petition. The trial court properly denied respondent's motions to dismiss.

II

[2] Respondent next argues that the trial court erred by improperly admitting hearsay evidence from the children's foster parents and a social worker regarding statements by the children and their teachers. Even assuming *arguendo* that this testimony constituted inadmissible hearsay, respondent has failed to demonstrate that the trial court's order must be reversed.

In a bench trial, "the rules of evidence are not so strictly enforced as in a jury trial and it will be presumed that the judge disregarded any incompetent evidence that may have been admitted unless it affirmatively appears that he was influenced thereby." *Stanback v. Stanback*, 31 N.C. App. 174, 180, 229 S.E.2d 693, 696 (1976), *disc. review denied*, 291 N.C. 712, 232 S.E.2d 205 (1977). "Where there is competent evidence to support the court's findings, the admission of incompetent evidence is not prejudicial." *In re McMillon*, 143 N.C. App. 402, 411, 546 S.E.2d 169, 175, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). Under this principle, respondent bore the burden of showing that the trial court relied on the incompetent evi-

IN RE L.O.K., J.K.W., T.L.W., & T.L.W.

[174 N.C. App. 426 (2005)]

dence in making its findings. *In re Huff*, 140 N.C. App. 288, 300, 536 S.E.2d 838, 846 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001).

Respondent has not met her burden. With respect to the children's statements, respondent acknowledges that the trial judge expressly stated that he was disregarding the children's statements in reaching his decision, but she argues that "it is impossible to completely do so" because it was "emotionally charged, prejudicial evidence." This argument turns the applicable standard on its head and asks this Court to presume that the trial judge did in fact rely upon the children's statements despite his assurance otherwise. Further, respondent makes no argument at all about whether the trial court relied upon statements attributed to the children's teachers. Because respondent has failed to rebut the presumption that the trial court disregarded inadmissible evidence in making its findings, we overrule this assignment of error.

III

**[3]** Respondent next assigns error to the trial court's determination that respondent neglected the children and that she willfully left the children in foster care for more than 12 months without making reasonable progress to correct the conditions that led to the children's removal from respondent's care. Although respondent contends on appeal that the trial court's conclusions are not supported by clear, cogent, and convincing evidence, respondent's failure to specifically assign error to any of the trial court's findings of fact precludes this Court from reviewing that issue. The sole question properly before this Court is whether the trial court's conclusions of law are supported by its findings of fact. *In re Padgett*, 156 N.C. App. 644, 649, 577 S.E.2d 337, 340 (2003).

The trial court first concluded that N.C. Gen. Stat. § 7B-1111(a)(1) (2003) justified termination of respondent's parental rights. Under N.C. Gen. Stat. § 7B-1111(a)(1), the court may terminate parental rights upon a finding that "[t]he parent has abused or neglected the juvenile." A child is considered neglected "if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen. Stat. § 7B-1111(a)(1). N.C. Gen. Stat. § 7B-101(15) (2003) in turn defines a neglected child as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, . . .; or who has been abandoned; or who is not provided necessary medical care; or who is not provided neces-

**IN RE L.O.K., J.K.W., T.L.W., & T.L.W.**

[174 N.C. App. 426 (2005)]

sary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law."

In deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child "at the time of the termination proceeding." *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (emphasis omitted). "[A] prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." *Id.* at 713-14, 319 S.E.2d at 231. Termination may not, however, be based solely on past conditions that no longer exist. *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). Nevertheless, when, as here, a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, "requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." *In re Shermer*, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003). In those circumstances, a trial court may find that grounds for termination exist upon a showing of a "history of neglect by the parent and the probability of a repetition of neglect." *Id.*

In this case, the trial court found that each of the children had previously been adjudicated to be neglected and that there is a probability of repetition of neglect if the children are returned to respondent's custody. The court specifically based that determination on the facts that, subsequent to the initial adjudication of neglect, (1) four, if not five, trial placements had failed; (2) respondent had a history of failing to show a positive response to counseling and educational programs; (3) respondent left a stable job and housing in Greensboro for Ohio where she did not have employment or independent housing; (4) respondent had offered uncertain evidence of stability in her working and living arrangements in Ohio; (5) respondent had to date been unable to cope with the pressure of caring for more than one child at a time and, if custody were restored to her, she would now have five children; and (6) respondent did not seek outside assistance when she needed it.

These findings are sufficient to establish neglect under N.C. Gen. Stat. § 7B-1111(a)(1). *See In re Leftwich*, 135 N.C. App. 67, 72, 518 S.E.2d 799, 803 (1999) (trial court could properly find a probability of future neglect when respondent mother had not made meaningful progress in improving her lifestyle); *In re Davis*, 116 N.C. App. 409,

414, 448 S.E.2d 303, 306 (the parents' failure to "obtain[] continued counseling, a stable home, stable employment, and [attend] parenting classes" was sufficient to show a probability that neglect would be repeated if the child were returned to the care of the parents), *disc. review denied*, 338 N.C. 516, 452 S.E.2d 808 (1994); *In re Johnson*, 70 N.C. App. 383, 389, 320 S.E.2d 301, 305-06 (1984) (improper care during a trial placement, a failure to make lifestyle changes, and sporadic attendance at counseling sessions constituted evidence of neglect).

Further, the trial court's conclusion that grounds existed for termination under N.C. Gen. Stat. § 7B-1111(a)(1) is also supported by the court's findings establishing that respondent failed to maintain contact with her children for extended periods of time. *See In re Graham*, 63 N.C. App. 146, 151, 303 S.E.2d 624, 627 (holding that the respondent's lack of involvement with his children for a period of more than two years established a pattern of abandonment and neglect; "[o]ne communication in a two year period does not evidence the personal contact, love, and affection that inheres in the parental relationship" (internal quotation marks omitted)), *disc. review denied*, 309 N.C. 320, 307 S.E.2d 170 (1983); *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982) ("Neglect may be manifested in ways less tangible than failure to provide physical necessities. . . . [T]he trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that inheres in the parental relationship.").

Under N.C. Gen. Stat. § 7B-1111(a), the trial court need only find that one statutory ground for termination exists in order to proceed to the dispositional phase and decide if termination is in the child's best interests. *Shermer*, 156 N.C. App. at 285, 576 S.E.2d at 407. Since we have concluded that the trial court properly concluded that the ground of neglect existed, we need not review the other ground relied upon by the trial court. *In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground of neglect found by the trial court.").

IV

[4] Respondent's final argument on appeal is that the poor audio recording of the termination hearing resulted in an inadequate transcript for purposes of appeal. All juvenile adjudicatory and dispositional hearings must be "recorded by stenographic notes or by

**IN RE L.O.K., J.K.W., T.L.W., & T.L.W.**

[174 N.C. App. 426 (2005)]

electronic or mechanical means." N.C. Gen. Stat. § 7B-806 (2003). "Mere failure to comply with this statute standing alone is, however, not by itself grounds for a new hearing." *In re Clark,* 159 N.C. App. 75, 80, 582 S.E.2d 657, 660 (2003). A party must also demonstrate that the failure to record the evidence resulted in prejudice to that party. *Id.*

General allegations of prejudice are insufficient to show reversible error resulting from gaps in the recording. *Id.* As this Court stated in *Clark,* "[w]here a verbatim transcript of the proceedings is unavailable, there are 'means . . . available for [a party] to compile a narration of the evidence, i.e., reconstructing the testimony with the assistance of those persons present at the hearing.' " *Id.* (quoting *Miller v. Miller,* 92 N.C. App. 351, 354, 374 S.E.2d 467, 469 (1988)). Any disputes among the parties regarding the content of testimony, objections, or rulings can be resolved by the trial judge in settling the record on appeal. *Id.*; *see also* N.C.R. App. P. 9(c)(1) (providing for narration of the evidence in the record on appeal and, if necessary, settlement of the record by the trial court).

In this case, respondent alleges only that "it is unclear whether some of the objections or trial court's rulings might have been omitted from the recording and from the transcript" and that the poor recording "has raised substantial questions about what might not have [been] recorded, including evidentiary objections and court rulings." The record contains no indication that respondent made any attempt to reconstruct the missing material under N.C.R. App. P. 9(c) or that she was in any way unable to do so. Without such a showing, respondent has failed to demonstrate prejudice from the flawed recording. *Clark,* 159 N.C. App. at 83, 582 S.E.2d at 662; *Miller,* 92 N.C. App. at 354, 374 S.E.2d at 469 (appeal dismissed when party alleged failure to record proceedings, but the party failed to attempt to reconstruct the proceedings through a narration of the evidence); *In re Peirce,* 53 N.C. App. 373, 382, 281 S.E.2d 198, 204 (1981) (no prejudice shown where party failed to allege or describe the contents of the lost testimony).

Affirmed.

Judges CALABRIA and ELMORE concur.