An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-97

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

IN THE MATTER OF:

L.J.C., IV                                      Wake County
                                                No. 12 JT 04

Appeal by respondent from order entered 12 February 2013 by Judge Monica Bousman in Wake County District Court. Heard in the Court of Appeals 29 May 2014.

> *Office of the Wake County Attorney, by Roger A. Askew, for petitioner-appellee Wake County Human Services.*
>
> *Administrative Office of the Courts, by Tawanda N. Foster, Appellate Counsel, for guardian ad litem.*
>
> *Robert W. Ewing for respondent-appellant.*

DAVIS, Judge.

Respondent-father L.C. ("Respondent") appeals from an order terminating his parental rights to his son L.J.C., IV, ("Larry").[1] After careful review, we affirm.

---

[1] The pseudonym "Larry" is used throughout this opinion to protect the identity of the child and for ease of reading.

**Factual Background**

Respondent and S.G.[2] are the parents of Larry, born in December 2010. On 29 November 2011, Wake County Human Services ("WCHS") received a report that Larry appeared dirty and had a rash that was not receiving proper treatment. In addition, it was reported that Larry's home was inundated with roaches and flies.

After receiving the report, WCHS initiated an investigation and discovered that Larry's home was, in fact, infested with roaches and flies and smelled of animal waste from "three to four dogs that lived in the home that were afflicted with mange or fleas." As a result, WCHS determined that the family's home was unsafe for a newborn child. Respondent and S.G. took Larry to the home of Larry's paternal grandmother in Alamance County. WCHS requested that Alamance County conduct a safety assessment of the paternal grandmother's residence where Larry would be living. The assessment revealed that Larry's paternal grandmother's husband — who also lived at the residence — had been convicted of murder in 1998. Because of the prior murder conviction, Larry's placement with his paternal grandmother was

_____

[2] S.G, Larry's mother, previously relinquished her parental rights as to Larry and, therefore, is not a party to this appeal.

not approved by the Alamance County Department of Social Services. Respondent and S.G. then entered into a new safety plan with WCHS that provided for S.G. and Larry to stay with S.G's paternal uncle.

On 10 January 2012, WCHS filed a petition alleging that Larry was a neglected and dependent juvenile. The petition stated that (1) Respondent and S.G. were not complying with their safety plans; (2) Respondent had been convicted of assault with a deadly weapon on 6 January 2012 and placed on probation; (3) Respondent had reported that "he [was] receiving disability due to ADHD, PTSD Bi-Polar [sic] and other things he cannot remember"; and (4) S.G. had expressed that she was not able to provide a suitable home for Larry. WCHS obtained nonsecure custody of Larry.

In an order entered 15 February 2012, the trial court adjudicated Larry a neglected juvenile pursuant to a consent order. The court ordered Respondent to (1) establish paternity; (2) consent to the release of his mental health records; (3) obtain sufficient housing and employment to meet the needs of himself and Larry; (4) complete a mental health assessment and follow applicable recommendations; (5) complete a positive parenting class and demonstrate knowledge learned therefrom; (6)

maintain regular contact with the social worker; and (7) consistently visit Larry in accordance with the visitation plan.

WCHS filed a motion to terminate Respondent's parental rights on 21 November 2012 on the grounds that Respondent had neglected Larry and that repetition of neglect was likely to occur if Larry was returned to Respondent's care. The trial court conducted a hearing upon the motion on 18 January 2013. By order entered 12 February 2013, the trial court terminated the parental rights of Respondent pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Respondent gave timely notice of appeal.

**Analysis**

A proceeding to terminate parental rights is a two-step process involving an adjudication phase and a disposition phase. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). During the adjudication phase, the trial court must determine whether the petitioner has established by clear, cogent, and convincing evidence that at least one of the ten grounds for termination enumerated in N.C. Gen. Stat. § 7B–1111 exists. *Id.* If the court determines that the existence of a statutory ground for termination was established, it then moves into the disposition phase in which it considers whether the

termination of parental rights is in the best interests of the juvenile. *Id.*

On appeal, we review a trial court's order terminating parental rights to determine whether the court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings, in turn, support its conclusions of law. *In re Shepard,* 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, *disc. review denied,* 358 N.C. 543, 599 S.E.2d 42 (2004). Unchallenged findings of fact are binding on appeal. *See In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) ("Findings of fact to which a respondent did not object are conclusive on appeal.").

N.C. Gen. Stat. § 7B-1111 lists neglect as one of the enumerated grounds for termination of parental rights and provides that a trial court may terminate a parent's rights if it determines that the juvenile is a neglected juvenile within the meaning of N.C. Gen. Stat. § 7B-101. N.C. Gen. Stat. § 7B-1111(a)(1)(2013). N.C. Gen. Stat. § 7B-101 defines a neglected juvenile as one who "does not receive proper care, supervision, or discipline" from a parent or caretaker or "who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15)(2013). "A finding of neglect sufficient to

terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). However, when the parent has not had custody of the child

> for a significant period of time prior to the termination hearing, requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible. In those circumstances, a trial court may find that grounds for termination exist upon a showing of a history of neglect by the parent and the probability of a repetition of neglect.

*In re L.O.K.*, 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (citations and quotation marks omitted).

On appeal, Respondent argues that the trial court erred in terminating his parental rights based on neglect. However, he does not argue that the trial court's findings of fact are without evidentiary support. Instead, Respondent argues that the trial court "failed to give proper weight to the evidence presented" and should have drawn different conclusions from the evidence. We disagree.

It is the trial "judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *In re Whisnant*,

71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). "It is not the function of this Court to reweigh the evidence on appeal." *Garrett v. Burris,* ___ N.C. App. ___, ___, 735 S.E.2d 414, 418 (2012), *aff'd per curiam,* 366 N.C. 551, 742 S.E.2d 803 (2013). Moreover, because Respondent has failed to challenge the trial court's findings, they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

In the present case, the trial court made the following pertinent findings of fact to support its conclusion that Respondent's parental rights should be terminated on the ground of neglect:

> 21. That the father has not established paternity as ordered, but he is the presumptive father of the child since his name appears on the birth certificate as the father of the child.
>
> . . . .
>
> 23. That the father has not obtained sufficient housing to meet the needs of himself and his child, nor provided verification of such. He remains at the same home that was not approved by Alamance County DSS for placement of the child on December 15, 2011. [Respondent] provided no evidence that the persons that presented safety concerns have left the home.
>
> 24. That the father has not obtained any employment since ordered by the Court to do so and it is unknown whether his SSI is sufficient to meet the needs of himself and

his child. He testified that he is training for employment at Burger King, but provided no documentation of this employment.

25. That the father completed a substance abuse evaluation which recommended that he engage in individual therapy, obtain a medication follow-up, and submit to random drug screens. A mental health assessment was not completed due to his failure to present clean drug screens.

26. That the father attended only two sessions of individual therapy to address his mental health needs. In July 2012, he was discharged by the service provider, Triumph, Inc. He also did not complete a parenting class as ordered by the Court.

27. That the father did not comply with five (5) requests by the social worker to complete genetic marker testing. He also failed to comply with the social worker['s] random drug screen requests, and he did not present any evidence that he complied with a random screen ordered by the Court at the May 2012 review of this matter. He tested positive for use of marijuana in a screen requested by his probation officer, which led to his incarceration for violation of his probation in August 2012.

28. That throughout this matter, [Respondent] continued to display a disruptive and non-compliant attitude with the agency, demonstrated by hostile and accusatory behavior at several planning meetings and visits set up by WCHS, at times in the presence of his son.

29. That for several months after the filing of the petition, the father was consistent with his visitation; however there were concerns that he did not demonstrate

effective parenting skills. At several visits he was not attentive to his son but more interested in raising issues about the case. He has not visited his child since August 2012 when he was released from jail. He was incarcerated again in November 2012 on charges of larceny and obtaining property by false pretenses.

. . . .

32. That in light of the pattern of neglect prior to the filing of the petition in January 2012, the adjudication of the child as a neglected juvenile, and the father's failure to comply with the orders of the Court to correct the conditions which led to the removal of the child and placement in foster care, it is likely that the pattern of neglect of the child would continue if placed in the care of the father.

We hold that the trial court's unchallenged findings of fact support its conclusion of law that the termination of Respondent's parental rights is appropriate. The record demonstrates that Respondent did not correct the conditions — as his case plan required him to do — that led to the adjudication of neglect. Specifically, he failed to (1) obtain sufficient housing to meet the safety needs of his son; (2) complete a mental health assessment after repeatedly failing to pass his random drug screens; and (3) establish his paternity of Larry because of his noncompliance with the social worker's repeated requests that he complete genetic marker testing.

In light of the history of neglect by Respondent, the lack of changed conditions, and the probability of a repetition of neglect based on Respondent's failure to take the proper steps to correct the conditions that led to the adjudication of neglect, we affirm the termination of parental rights on that ground. *See In re J.W.*, 173 N.C. App. 450, 465, 619 S.E.2d 534, 545 (2005) (holding that trial court's finding that respondent failed to comply with her case plan supported conclusion of neglect), *aff'd per curiam,* 360 N.C. 361, 625 S.E.2d 780 (2006).

**Conclusion**

For the reasons stated above, we affirm the trial court's order terminating Respondent's parental rights.

AFFIRMED.

Judges CALABRIA and STROUD concur.

Report per Rule 30(e).