715 S.E.2d 563 (2011)
In re J.H.K., J.D.K., Minor Children.
No. COA10-12-2.
Court of Appeals of North Carolina.
September 6, 2011.
*565 Janet K. Ledbetter, Hillsborough, for Respondent-appellant father.
Smith, James, Rowlett, and Cohen, Greensboro, by Margaret Rowlett, for Guardian ad litem-appellee.
Mercedes O. Chut, Greensboro, for Guilford County Department of Social Services, Petitioner-appellee.
HUNTER, JR., ROBERT N., Judge.
The North Carolina Supreme Court reversed the 6 July 2010 opinion of the Court of Appeals and remanded the matter back to this Court for further consideration of issues not addressed by the original opinion. We affirm the decision of the trial court.

I. Factual and Procedural History
J.D.K. and J.H.K. were first placed into the custody of Guilford County Department of Social Services ("GCDSS") 25 January 2007 because of their parents' ongoing substance abuse and because the children's needs were not being met. GCDSS became involved after receiving a neglect report for injurious environment, and police were then called to the residence. When police arrived at the residence, they found marijuana and drug paraphernalia. At that time, the mother was charged with child neglect.[1] GCDSS worker, Latarsha Martin ("Ms. Martin"), gave the following testimony with regard to the conditions of the home:
There were DVDs and videotapes on the floor and the children were slipping on them. In the living room a towel was stuck to the floor with a dark sticky substance, the same substance that was all over the table beside the computer. The kitchen table was sticky and dirty. There was an open bag of trash lying on its side in the kitchen and the garbage can was overflowing with trash. [The mother] stated that the sticky substance on the carpet was chocolate syrup. There was a bowl of cereal on the table with a large sharp knife beside it in easy reach of the children. There were only apples in the refrigerator and the mother stated that there was no other food in the home. The hallways and the bedrooms were unkept and there was debris on the floor throughout the home. Dirty water was like standing water in the washing machine, dirty standing water.
J.D.K. and J.H.K. were adjudicated dependent and neglected 16 March 2007.
During the thirty months that J.D.K. and J.H.K. were in foster care, Respondent was in compliance with his case plan for a period of seven months, from August 2007 to March 2008. Throughout this period of compliance, Respondent was enrolled in Christian Counseling Wellness Group ("CCWG"), an in-patient treatment program. CCWG is a two-year program that can be completed in twelve months. Respondent was enrolled in CCWG as a condition of his probation.[2] Respondent *566 did not complete the CCWG program, in violation of his probation. As a result, "[Respondent] admitted to a willful violation of his probation and took an active sentence in September of 2008."
Since J.D.K. and J.H.K. were adjudicated dependent and neglected, Respondent has exhibited a pattern of recovery and relapse regarding his addiction to crack-cocaine and marijuana. Respondent was incarcerated at the time of the Termination of Parental Rights Hearing ("TPR Hearing"), but he was able to attend the hearing.[3] During the TPR Hearing, Respondent contended he was in a period of recovery and not suffering from active addiction due to his successful completion of the New Direction program at Duplin Correctional Center.
GCDSS ("Petitioner") and Karen Moorefield, the guardian ad litem ("GAL"), moved to terminate the parental rights of Respondent, pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) and (6)(2009). A court may terminate parental rights if it finds one or more of the grounds outlined in N.C. Gen.Stat. § 7B1111(a)(1)-(10) to be applicable. The trial court agreed with Petitioner that termination of Respondent's parental rights was proper. A court may terminate the parental rights upon finding "[t]he parent has abused or neglected the juvenile." N.C. Gen.Stat. § 7B-1111(a)(1). A court may also terminate parental rights upon finding "[t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101." N.C. Gen.Stat. § 7B-1111(a)(6).
When this case previously came before this Court, we addressed only the first of four issues raised by Respondent. We found the trial court erred when it did not ensure that the court appointed GAL was present at the TPR hearing to protect and promote the best interests of J.D.K. and J.H.K., in violation of N.C. Gen.Stat. § 7B-1108(b). The North Carolina Supreme Court reversed this decision and remanded back to this Court for consideration of issues not addressed by the original opinion.
The remaining three issues raised by Respondent are (1) whether the trial court erred in finding neglect of J.D.K. and J.H.K.; (2) whether the trial court erred in finding J.D.K. and J.H.K. to be dependent juveniles; and (3) whether the trial court erred in determining termination of Respondent's parental rights to be in the best interest of J.D.K. and J.H.K.

II. Standard of Review
When reviewing an appeal from an order terminating parental rights, we look to whether: (1) there is clear, cogent, and convincing evidence to support the trial court's findings of fact; and (2) the findings of fact support the conclusions of law. In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000). Clear, cogent, and convincing evidence "is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984). If the decision is supported by such evidence, the trial court's findings are binding on appeal, even if there is evidence to the contrary. In re Williamson, 91 N.C.App. 668, 674, 373 S.E.2d 317, 320 (1988).

III. Analysis
N.C. Gen.Stat. § 7B-1111(b) (2009) provides that "[t]he burden in [termination of parental rights] proceedings shall be upon the petitioner or movant to prove the facts justifying such termination by clear and convincing evidence." Pursuant to this statute, GCDSS had the burden of proving, through clear and convincing evidence, that the termination of Respondent's parental rights was proper under the applicable statutes.
Respondent first argues GCDSS failed to meet its burden of proof as to whether the juveniles in question were neglected as defined *567 by N.C. Gen.Stat. § 7B-101(15). A neglected juvenile is defined as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen.Stat. § 7B-101(15) (2009).
Evidence of prior adjudication of neglect or abuse is admissible in a subsequent proceeding to terminate parental rights. In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984). However, to reach the legal conclusion of neglect, the trial court must determine neglect exists at the time of the termination of parental rights proceeding. See id. at 716, 319 S.E.2d at 232. The trial court must consider evidence of changed conditions following the adjudication and must evaluate the probability of repetition of neglect. Id. at 715, 319 S.E.2d at 232. Where the evidence shows a likelihood of repetition of neglect, the trial court may reach a conclusion of neglect under N.C. Gen.Stat. § 7B-1111(a)(1). In re Leftwich, 135 N.C.App. 67, 72, 518 S.E.2d 799, 803 (1999).
Relevant to the determination of probability of repetition of neglect is whether the parent has "made any meaningful progress in eliminating the conditions that led to the removal of [the] children." Id. That a parent provides love and affection to a child does not prevent a finding of neglect. In re Montgomery, 311 N.C. at 109, 316 S.E.2d at 251-52. Neglect exists where the parent has failed in the past to meet the child's physical and economic needs and it appears that the parent will not, or cannot, correct those inadequate conditions within a reasonable time. Id. at 109, 316 S.E.2d at 252.
The trial court made the following findings of fact:
5. The juveniles are currently in the legal and physical custody of the Guilford County Department of Social Services and were placed in custody by a Non-secure Custody Order entered on January 25, 2007. The juveniles were adjudicated neglected and dependent on March 16, 2007. The juveniles have remained in the legal and physical custody of the Guilford County Department of Social Services since that date.
6. The issues which cause[d] the juveniles to enter foster care include but are not limited to the following:
a. The police were called to the home on January 22, 2007 due to a water leak and a child who had been crying for approximately twenty minutes.
b. Needles, presumably used for drugs, were left where the children could access them.
c. The police found a small amount of marijuana, and the mother was arrested for the possession of marijuana and drug paraphernalia. She was also charged with child neglect.
d. The washing machine and the master bath tub were full of dirty water. The refrigerator was empty except for a few apples. The freezer had no food.
e. The father, who was not at home at the time, had pending criminal charges.
....
26. [Respondent's] case plan was updated to include that condition that he would participate in the Christian Counseling Wellness Group.
27. During the time [Respondent] was in the Christian Counseling Wellness Group, he was in substantial compliance with the case plan as he residing [sic] at this facility, he was submitting to drug screens, which were negative, and he obtained a substance abuse assessment through the facility. In addition, he was visiting with the children. He did not participate in a parenting psychological assessment. He began parenting classes but did not complete the program.
28. In March of 2008, [Respondent] left the Christen [sic] Counseling Wellness Group without successfully completing the program.
29. After leaving this program, [Respondent] did not maintain any contact with *568 Department of Social Services, he did not submit to any drug screens and did not remain in compliance with his case plan.
30. [Respondent] has not visited with the minor children since leaving the residential drug treatment facility on March 25, 2008.
31. In June, 2008, [Respondent] was arrested for violating his probation. He did not contact DSS and let them know of his incarceration. [Respondent] admitted to a willful violation of his probation and took an active sentence in September, 2008.
32. Since being in prison, [Respondent] has successfully completed the New Directions program and is working on his substance abuse issues as well as other issues. His maximum release date is December, 2009, and his possible release date is October 2, 2009.
33. [Respondent's] last release from custody resulted in a period of recovery that lasted 4 months and then he relapsed which resulted in his current incarceration.
34. Upon his release, [Respondent] admits he would not be able to care for the children until he had established himself in the world outside of prison.
35. During the 2 1/2 years or 30 months, the children have been in foster care, [Respondent] has been in compliance with his case plan from his release from jail in November of 2007 to March of 2008 for a period of 5 months. He worked on components of his case plan while in the Guilford County jail from April of 2007 to November of 2007.
36. Since the minor children came into custody, [Respondent] does well and addresses his substance abuse issues only while incarcerated or in residential treatment.
....
42. There is a probability of a repetition of neglect if the minor children are returned to [Respondent] as he remains incarcerated on charges which occurred after the children were placed in foster care, he relapsed within four months of his release from jail in 2008 and he has not successfully addressed his substance abuse issues except during incarceration or a residential drug treatment program and that was for a period of only four months.
These findings of fact are not challenged on appeal and are therefore binding on this Court. See In re Padgett, 156 N.C.App. 644, 648, 577 S.E.2d 337, 340 (2003). Respondent contends these findings of fact do not support a reasonable probability of a repetition of the neglect. We disagree.
Despite the progress Respondent made in the New Directions program at Duplin Correctional Center, he failed to complete the CCWG program and has relapsed in the past. The trial court acknowledged Respondent's most recent efforts toward sobriety, but determined his success at sobriety while incarcerated was not indicative of how he would manage his addiction when released from custody. The trial court balanced the weight of the evidence and came to a reasonable conclusion. We hold the findings of fact evidence a reasonable probability of repetition of neglect. The trial court's conclusion of law that the juveniles were neglected is clearly supported by this factual predicate.
Because a finding of only one ground is necessary to terminate one's parental rights, we need not consider Respondent's arguments with respect to the other ground found by the trial court. See In re B.S.D.S., 163 N.C.App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground of neglect found by the trial court.").
Respondent finally argues the trial court abused its discretion in finding it was in J.D.K. and J.H.K.'s best interest to terminate Respondent's parental rights. Respondent's argument is based on the absence of the GAL at the termination hearing. The law of the case is otherwise. Our Supreme Court held "the nonlawyer GAL volunteer is not required to be physically present at the TPR hearing." In re J.H.K., 365 N.C. 171, 178, 711 S.E.2d 118, 122 (2011). We thus find no abuse of discretion by the trial court in finding termination of Respondent's parental rights to be in the best interest of the juveniles.
*569 We hold there is clear, cogent, and convincing evidence to support the trial court's findings of fact, and the findings of fact support the conclusions of law. Therefore, we affirm the trial court's decision to terminate Respondent's parental rights.
Affirmed.
Judges McGEE and STROUD concur.
NOTES
[1] Respondent was not at the residence at the time of the investigation.
[2] Respondent's probation resulted from a plea deal he took for crimes he was charged with in June 2007. Those charges included attempted strangulation, possession of a controlled substance, and failure to appear for a felony.
[3] While Respondent's appeal is the matter before this Court, it should be noted that the children's mother was not present at the TPR hearing and that she has not appealed the trial court's order terminating her parental rights.