An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-115

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN THE MATTER OF:

L.F.G.K. and A.L.K.                Cleveland County
                                   Nos. 09 JT 128; 10 JT 125

Appeal by respondent parents from order entered 28 October 2013 by Judge Meredith A. Shuford in Cleveland County District Court. Heard in the Court of Appeals 30 June 2014.

> *Charles E. Wilson, Jr. for petitioner-appellee Cleveland County Department of Social Services.*
>
> *Leslie Rawls for respondent-appellant mother.*
>
> *Mercedes O. Chut for respondent-appellant father.*
>
> *Parker Poe Adams & Bernstein LLP, by Deborah L. Edney, for guardian ad litem.*

ELMORE, Judge.

Respondent parents appeal from an order terminating their parental rights to their minor children, L.F.G.K. ("Linda"[1]) and A.L.K. ("Anna"). Respondent father also appeals from a prior

---

[1] Pseudonyms are used to protect the identity of the juveniles and for ease of reading.

order ceasing reunification efforts. We affirm the order terminating respondent's parental rights.

The Cleveland County Department of Social Services ("DSS") became involved with respondent mother in January 2009, when it filed juvenile petitions alleging her minor children J.K. and B.K.[2] were abused and neglected juveniles. Linda was born to respondents in June 2009, and the day after her birth DSS took non-secure custody of her and filed a petition alleging she was a neglected juvenile. On 23 November 2009, respondents entered into a consent order of adjudication in which Linda and her older siblings were adjudicated neglected. The trial court entered a combined disposition, review, and permanency planning order on 4 January 2010, in which it continued custody of Linda and her siblings with DSS and set the permanent plan for the children as reunification with their parents.

In August 2010, respondent mother gave birth to Anna. Shortly after her birth, DSS took non-secure custody of Anna and filed a petition alleging she was a neglected juvenile. The trial court entered an adjudication and disposition order on 22 February 2011, adjudicating Anna a neglected juvenile and continuing custody of her with DSS. The court also relieved DSS

---

[2] Respondent father is not the father of J.K. and B.K.

from its obligation to make reasonable efforts to return Anna to respondents' home. That same day, the trial court entered an order regarding Linda and her older siblings in which it awarded the custody of Linda's siblings to their father, released DSS from its obligation to make reasonable efforts to return Linda to respondents' home, and set the permanent plan for Linda as adoption. On 24 February 2011, the court entered an order setting the permanent plan for Anna as adoption. Respondents appealed from the trial court's orders entered 22 and 24 February 2011, and this Court affirmed all three orders. *In re J.K.*, 216 N.C. App. 416, 716 S.E.2d 875 (2011).

On 5 March 2012, by the agreement of all parties, the trial court entered a permanency planning and review order in which it sanctioned a permanent plan for Linda and Anna of reunification with respondents, with a concurrent plan of adoption. The court ordered DSS to resume making reasonable efforts to return the children to respondents' home, granted respondents supervised visitation with the children, and ordered respondents to cooperate with DSS's reunification efforts. DSS worked with respondents toward reunification with their children. However, by order entered 22 January 2013, the trial court ordered reunification efforts to cease, terminated respondents'

visitation with the children, and set the permanent plan for the juveniles as adoption. Respondents filed timely notices to preserve their right to appeal from the 22 January 2013 order ceasing reunification efforts.

DSS filed petitions to terminate respondents' parental rights to Linda and Anna on 11 February 2013. DSS alleged grounds of neglect, failure to make reasonable progress toward correcting the conditions that led to the removal of the children, and failure to pay a reasonable portion of the cost of care for the children. N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2013). On 28 October 2013, after a multi-day hearing, the trial court entered an order terminating respondents' parental rights to Linda and Anna, based upon the grounds of neglect and failure to make reasonable progress toward correcting the conditions that led to the removal of the children. Respondents filed timely notices of appeal.

## II. **Analysis**

We first address respondents' common argument that the trial court lacked jurisdiction to hear the petitions to terminate their parental rights because DSS failed to include in the petitions a statement of facts sufficient to warrant a

determination that one or more of the grounds for terminating parental rights existed.

A petition to terminate parental rights must include "[f]acts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist." N.C. Gen. Stat. § 7B-1104(6) (2013). "While there is no requirement that the factual allegations be exhaustive or extensive, they must put a party on notice as to what acts, omissions or conditions are at issue." *In re Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002). "Merely using words similar to the relevant statutory ground for termination is not sufficient to comply with N.C. Gen. Stat. 7B-1104(6)." *In re H.L.A.D.*, 184 N.C. App. 381, 392, 646 S.E.2d 425, 433-34 (2007), *aff'd*, 362 N.C. 170, 655 S.E.2d 712 (2008).

We agree with respondents that the petitions to terminate their parental rights lack statements of facts in support of any grounds for termination. Nevertheless, this deficiency is not jurisdictional and instead constitutes a claim for relief under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. *In re Quevedo*, 106 N.C. App. 574, 578, 419 S.E.2d 158, 159 (1992). Respondents never moved for a dismissal under Rule 12(b)(6) in the trial court, and "a Rule 12(b)(6) motion may not

be made for the first time on appeal." *In re H.L.A.D.*, 184 N.C. App. at 392, 646 S.E.2d at 434. Accordingly, respondents have failed to preserve this issue for appellate review. Respondent mother presents no other arguments for our review, and we therefore dismiss her appeal.

Respondent father also argues that the trial court erred in ceasing reunification efforts. Respondent father contends three of the trial court's findings of fact in support of its conclusion to cease reunification efforts with him are not supported by record evidence. Respondent father's arguments are misplaced.

Our review of orders ceasing reunification efforts "is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law. The trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *In re L.M.T.*, 367 N.C. 165, 168, 752 S.E.2d 453, 455 (2013) (citations and quotation marks omitted).

Respondent father specifically argues that in the trial court's 22 January 2013 order ceasing reunification efforts, findings of fact 13, 22, and 23 are unsupported by any record evidence. In these findings, the trial court stated:

13.  That although the parents have received [] liberal three-hour weekly visitation since March, 2012, the parents have failed to demonstrate an ability to re-direct the children; and failed to demonstrate the ability to provide appropriate meals and snacks on a consistent basis.

.  .  .  .

22. That the respondent parents have been resistant to complete all of the recommended services.  The parents refused to meet with a budget counselor; and refused to meet with a nutritionist, which would have been at no cost to the parents.  That when requested, the parents stated that they have already done these things, although they have not demonstrated these skills.

23.  That the respondent parents have not demonstrated to the Court that they have improved their situation, and have not demonstrated to the Court their ability to provide a safe and stable residence or that they will be able to do so within a reasonable time.

These findings of fact are fully supported by both the testimony of Sharon Moore, a social worker assigned to the juvenile case, and her report to the trial court.  In turn, these findings, coupled with the trial court's unchallenged findings that a safe return of the juveniles to respondent's home was not likely within the next six months and that further reunification efforts would be futile, support its conclusion to cease

reunification efforts. Accordingly, we affirm the trial court's order ceasing reunification efforts with respondent father.

Respondent father additionally argues the trial court erred in concluding that grounds existed to terminate his parental rights. We first address respondent father's arguments regarding the ground of neglect.

Grounds exist to terminate parental rights where the parent has neglected the juvenile such that the court finds the juvenile to be a neglected juvenile within the meaning of N.C. Gen. Stat. § 7B-101. N.C. Gen. Stat. § 7B-1111(a)(1) (2013). A neglected juvenile is defined in part as one who "does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2013). Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.'" *In re L.O.K.*, 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting *In re Ballard*, 311 N.C. 708, 715, 319

S.E.2d 227, 232 (1984)). However, "[w]here, as here, a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." *In re Shermer*, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) (citations omitted). A trial court may terminate parental rights based upon prior neglect of the juvenile if "the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to her parents." *In re Reyes*, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000). "Relevant to the determination of probability of repetition of neglect is whether the parent has made any meaningful progress in eliminating the conditions that led to the removal of [the] child[]." *In re J.H.K.*, 215 N.C. App. 364, 369, 715 S.E.2d 563, 567 (2011) (citation and quotation marks omitted).

Here, Linda and Anna had previously been found to be neglected juveniles, and the trial court made numerous findings of fact regarding respondent father's failure to make any meaningful progress in his case plan, which evince a probability of repetition of neglect if the children were returned to his care. After over three years of working with DSS toward

reunification, the court found respondent father had not developed a significant bond with Linda or Anna. Respondent father was often disengaged from the children during visits, failed to assist the mother with parenting during the visits, and had to be prompted by the supervising social worker to interact with his children. The court found respondent father would occasionally demonstrate appropriate parenting skills after direction from the social worker, but would not be able to demonstrate the same skills just a week or two later without prompting from the social worker. Respondent father also failed to comply with recommended treatment services, including budget and nutrition education or counseling, asserting that he had previously received the services and they were unneeded, even though DSS determined that respondents were struggling financially, falling behind in their bills, and not providing appropriate food or snacks for the children. Ultimately, after visiting with respondents, the children began displaying oppositional behavior outside of the visits, and Linda needed counseling for dealing with anxiety that she developed from the visits. The court further found that respondent father had not demonstrated an ability to take Anna to the therapy and medical appointments she required due to her speech apraxia, or even had

an understanding of her disorder. Additionally, the court found respondent father had failed to provide a safe and sanitary home for the juveniles, and continued to fail to acknowledge any responsibility for the reasons why Linda and Anna were in the custody of DSS.

The trial court's findings are either unchallenged by respondent father, and thus binding on appeal, *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991), or are supported by record evidence. We hold these findings support the trial court's conclusion that grounds exist to terminate respondent father's parental rights based on his past neglect of his children and the probability of repetition of that neglect if Linda and Anna were returned to his care. We reject respondent father's contention that the trial court's conclusion is founded solely upon their poverty, as throughout the history of this case respondents rejected assistance offered by DSS to alleviate the impact of their financial hardships. Similarly, there is no evidence suggesting that respondent father's recent employment ameliorated the conditions underlying the court's findings suggesting a probability of repetition of neglect.

Accordingly, we hold the that trial court did not err in concluding grounds existed to terminate respondent father's

parental rights to Linda and Anna pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). As such, we need not address his arguments regarding the trial court's conclusion that grounds to terminate his parental rights also existed under N.C. Gen. Stat. § 7B-1111(a)(2). *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006) (holding that when "the trial court finds multiple grounds on which to base a termination of parental rights, and an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds"). Respondent father does not challenge the trial court's conclusion that it is in the children's best interests to terminate his parental rights, and we thus affirm the trial court's order terminating the respondent father's parental rights to Linda and Anna.

Dismissed in part, affirmed in part.

Chief Judge MARTIN and Judge HUNTER, Robert N., concur.

Report per Rule 30(e).