An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-502

Filed: 20 October 2015

Sampson County, Nos. 08 JT 42, 08 JT 97

IN THE MATTER OF: I.S. and D.S.

Appeal by respondent-mother from Orders entered 15 January 2015 by Judge Paul A. Hardison in Sampson County District Court. Heard in the Court of Appeals 5 October 2015.

> *Warrick, Bradshaw and Lockamy, P.A., by Frank L. Bradshaw, for petitioner-appellee Sampson County Department of Social Services.*
>
> *Leslie Rawls for respondent-appellant.*
>
> *Poyner Spruill LLP, by Meghan B. Pridemore, for Guardian ad Litem.*

ELMORE, Judge.

Respondent-mother (respondent) appeals from the trial court's Orders terminating her parental rights to her daughters I.S. (Isabel)[1] and D.S. (Dahlia). After careful consideration, we affirm the trial court's Orders.

## I. Background

---

[1] We use pseudonyms to protect the identity of the minors in this case.

On 2 May 2008, the Sampson County Department of Social Services (DSS) took non-secure custody of three-year-old Isabel and filed a petition alleging that she was a neglected juvenile. The petition alleged that respondent was living with her nine children in a storage shed that was not intended for human habitation, that had no bathroom or kitchen facilities, and that was filled with piles of bedding and clothing. After a hearing on 29 May 2008, the trial court adjudicated Isabel a neglected juvenile in that she had been "living in an inappropriate and an injurious living arrangement as follows: no bathroom facilities, no running water, lack of appropriate bedding and space." The trial court ordered that custody of Isabel shall remain with DSS. At the disposition hearing on 12 June 2008, the trial court ordered DSS "to make reasonable efforts to reunify the family." Respondent and Isabel's father subsequently moved into a house with their newborn, Dahlia. Also on 12 June 2008, per DSS's recommendation, Isabel returned to respondent's care on a trial basis.

On 2 October 2008, DSS removed both Isabel and Dahlia from respondent's home. DSS took non-secure custody of Dahlia and filed a petition alleging that she was a neglected and dependent juvenile. The petition alleged that respondent's house was "filthy in that there were excessive flies, a bucket of regurgitation, rotting food, piles of dirty dishes, and piles of clothes strewn throughout the home." The petition also stated that respondent and the father had been arrested on animal cruelty

charges. Both Isabel and Dahlia were placed in foster care due to the conditions in the home.

On 22 December 2008, the trial court held an adjudication hearing and concluded that Dahlia was a neglected juvenile in that she lived in an environment injurious to her welfare. Respondent entered into a case plan with the objectives of maintaining suitable housing, participating in parenting and financial planning classes, and undergoing a psychological evaluation.

On 19 February 2009, Isabel and Dahlia were placed with respondent on a trial basis. However, the children were subsequently returned to DSS custody and placed in foster care on 14 August 2009 after respondent was hospitalized for a drug overdose. By orders filed on 27 May 2010, the trial court changed the permanent plan for Isabel and Dahlia from reunification to adoption and/or guardianship. The trial court found that respondent had very poor judgment, was not able to maintain stable housing, and was not able to adequately care for Isabel and Dahlia.

On 29 June 2011, DSS filed a motion to terminate respondent's parental rights as to Isabel and Dahlia. After several continuances, the trial court conducted a hearing on 20 November 2014. By Orders filed 15 January 2015, the trial court concluded grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), and (a)(3), based on neglect, failure to make reasonable progress, and failure to pay a reasonable portion of the cost of care for the

children, respectively.  N.C. Gen. Stat. § 7B-1111(a)(1)–(3) (2013).  The trial court concluded it was in Isabel and Dahlia's best interests to terminate respondent and the father's parental rights.  Respondent now appeals.[2]

## II. Analysis

A. Standard of Review

When reviewing a termination of parental rights case, we consider "whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Shepard*, 162 N.C. App. 215, 221–22, 591 S.E.2d 1, 6 (2004) (citing *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984)).  "We then consider, based on the grounds found for termination, whether the trial court abused its discretion in finding termination to be in the best interest of the child." *Id.* at 222, 591 S.E.2d at 6 (citing *In re Nolen*, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995)).  "Findings of fact to which a respondent did not object are conclusive on appeal." *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) (citing *In re Wilkerson*, 57 N.C. App. 63, 65, 291 S.E.2d 182, 183 (1982)).

B. Grounds for Termination

The trial court terminated respondent's parental rights to Isabel and Dahlia on the basis of neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1).  A neglected

---

[2] The father does not appeal.

juvenile is defined, in part, as "[a] juvenile who does not receive proper care, supervision, or discipline . . . or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2013). In order to support an adjudication under N.C. Gen. Stat. § 7B-1111(a)(1), "[n]eglect must exist at the time of the termination hearing." *In re C.W. & J.W.*, 182 N.C. App. 214, 220, 641 S.E.2d 725, 729 (2007). However, where "the parent has been separated from the child for an extended period of time, the petitioner must show that the parent has neglected the child in the past and that the parent is likely to neglect the child in the future." *Id.* (citing *In re Ballard*, 311 N.C. 708, 714–15, 319 S.E.2d 227, 231–32 (1984)). "Relevant to the determination of probability of repetition of neglect is whether the parent has 'made any meaningful progress in eliminating the conditions that led to the removal of [the] children.'" *In re J.H.K.*, 215 N.C. App. 364, 369, 715 S.E.2d 563, 567 (2011) (quoting *In re Leftwich*, 135 N.C. App. 67, 72, 518 S.E.2d 799, 803 (1999)).

Here, it is undisputed that Isabel and Dahlia were adjudicated neglected juveniles. Respondent argues, however, that the trial court erred in concluding that this neglect would likely be repeated if the children were returned to her custody. We believe the following unchallenged findings of fact are sufficient to support the trial court's conclusion of law that there is a high probability of repetition of neglect if Isabel and Dahlia were returned to respondent's care:

12.[3] That the Respondent Mother lives in the State of Pennsylvania, in an area near Philadelphia.

13. That over the course of the case with the Department of Social Services the Sampson County Department of Social Services provided an additional twelve (12) month period to work with the Respondent Parents to correct the issues that brought the Juvenile[s] into care.

. . . .

15. That the Respondent Mother has not been able to acquire stable employment over the course of the case.

. . . .

17. That the Respondent Mother did not cooperate with a psychological evaluation as she was resistant to questions preventing the psychologist from getting an accurate evaluation completed resulting in a lack of proper care for the Respondent Mother and the family.

18. That the Respondent Mother failed to maintain regular contact with the Department of Social Services.

. . . .

22. That on or about June 11, 2008, [Isabel] was placed back in the home of the Respondent Mother and [the] Father but [was] later removed due to problems in the home.

23. That in February 2009, a trial home placement was attempted again but the children taken back [sic] into the nonsecure custody of the Department of Social Services due to recurring problems despite the family being provided intensive in-home services.

---

[3] The numbers refer to the termination Order entered as to Isabel. The same findings appear in the termination Order entered as to Dahlia, but with different numbers.

24. That since 2009 no child has been able to be placed back with the Respondent Mother or . . . Father.

25. That several of the Juvenile[s'] older siblings are residing with a relative who was awarded custody of the siblings due to the parents' failure to complete their service agreements and properly address the issues that brought the children into care.

. . . .

30. That the Respondent Mother admitted to many mistakes in the past but asked the Court to now give her a chance, despite the fact [Isabel] has been in care since 2008.

. . . .

32. That the Respondent Mother has not been able to maintain stable housing over the life of the case having nearly lost her home several times and has relied upon third parties for assistance.

33. That since moving to Pennsylvania the Respondent Mother and [the] Father have engaged in several acts of domestic violence resulting in the Respondent Mother being injured on at least two occasions.

The trial court's findings of fact demonstrate that respondent has a history of not complying with her case plan, which included her failure to complete a psychological evaluation and her inability to maintain a stable home. Further, DSS twice placed Isabel and once placed Dahlia back with respondent, however, respondent was unable to meet their needs. For these reasons, we conclude the trial court properly determined that there was a high probability of repetition of neglect

should Isabel and Dahlia be returned to respondent's care. Accordingly, the trial court did not err in finding that respondent's parental rights were subject to termination under N.C. Gen. Stat. § 7B-1111(a)(1). Our determination that there is at least one ground to support a conclusion that parental rights should be terminated makes it unnecessary to address the remaining grounds. *In re Clark*, 159 N.C. App. 75, 84, 582 S.E.2d 657, 663 (2003).

## III. Conclusion

In sum, the trial court's Orders terminating respondent's parental rights are affirmed.

AFFIRMED.

Judges DILLON and DIETZ concur.

Report per Rule 30(e).