DILLON, Judge.
Respondent ("Mother") appeals from orders[1] terminating her parental rights to her children, T.Y. ("Anne"), V.Y. ("Beth"), I.Y. ("Carly"), and S.Y. ("Dana").[2] After careful review, we affirm.
I. Background
In December 2013, Lee County Department of Social Services ("DSS") filed petitions alleging that Anne, Beth, Carly, and Dana were neglected juveniles. DSS stated that over the previous twelve months, it had received reports concerning domestic violence between Mother and her boyfriend ("Boyfriend"). DSS claimed that in June 2013, Boyfriend hit Mother in the leg with a fishing pole, and grabbed her by the arms and threw her against a wall. DSS further claimed that in September 2013, Boyfriend "jumped" Mother and pulled her hair, threw her on the ground, struck her, and broke her car windshield with a 2x4 or other similar object. Mother's oldest son, who is not a subject of this appeal, sprayed Boyfriend with pepper spray in an attempt to protect Mother. At least some of the juveniles were present during each of these incidents. In October 2013, Mother entered into a safety plan in which she agreed she would have no contact with Boyfriend.
DSS filed the juvenile petitions after determining that Mother failed to comply with the safety plan and continued to have contact with Boyfriend. DSS alleged that Mother was "spending nights" with Boyfriend, along with two of the juveniles, and had "coached" the juveniles to lie to DSS about their contact with Boyfriend and where they were residing. DSS expressed concern regarding safety issues in Boyfriend's home to which the children were exposed, including holes in the floor, inadequate heating, and lack of furnishings for the children. DSS further noted that Boyfriend and Mother had "current cross-criminal charges for assault on a female and simple assault[.]"
In addition to the above allegations of neglect, DSS also alleged that Mother: (1) had a history of housing instability and homelessness; (2) had been charged with school truancy violations; (3) failed to provide the juveniles with adequate dental care, and as a result two of the children required surgery; (4) had a pattern of engaging in unhealthy relationships; and (5) had a history of nine total cases with child protective services. DSS obtained non-secure custody of the juveniles. In February 2014, the trial court adjudicated the juveniles neglected based on stipulations by the parties that the juveniles did not receive proper care or supervision and lived in an environment injurious to their welfare.
In August 2014, the trial court ceased reunification with Mother's consent. Thereafter, Mother was allowed visitation, but continued to enter into consent orders that reunification efforts should not resume. In July 2015, DSS filed motions to terminate Mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a) based on the following sections: (1) neglect, (2) failure to make reasonable progress, (3) failure to pay support, and (6) dependency. N.C. Gen. Stat. § 7B-111(a)(1)-(3), (6) (2015). In April 2016, the trial court terminated Mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2) and (3).[3] The orders were amended on 11 May 2016 with the consent of the parties in order to correct clerical and typographical errors. Mother timely appealed.
II. Analysis
Mother argues that the trial court erred in concluding that grounds existed to terminate her parental rights. We disagree.
N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support termination. In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D. , 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005).
In the instant case, the trial court concluded that grounds existed to terminate Mother's parental rights based on neglect. N.C. Gen. Stat. § 7B-1111(a)(1). A "neglected juvenile" is defined as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]
N.C. Gen. Stat. § 7B-101(15) (2015). Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.' " In re L.O.K. , 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting In re Ballard , 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) ). When, however, as here, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id . "In those circumstances, a trial court may find that grounds for termination exist upon a showing of a history of neglect by the parent and the probability of a repetition of neglect." Id.
Here, the trial court found as fact:
23. The juvenile[s have] been in custody of [DSS] since December 16, 2013 for over two years. Prior to [DSS] having custody, the family had a history of [Child Protective Service] reports beginning in 2006.
....
25. [Mother] has been offered and provided a substantial amount of resources and services that started prior to the juvenile[s] being placed in DSS custody on December 16, 2013. The services offered included in-home services, case & safety planning, visitation, shared parenting, school activities, home visits and assistance with & referrals for placement/housing, employment, individual teaching, parenting, life/decision-making skills and domestic violence. She has had more than an ample opportunity to put herself in a position to care for her child[ren]. Despite substantial services and resources being offered and provided for [Mother] and [Mother] maintaining employment, completing parenting classes and attending a few counseling sessions & domestic violence group meetings on her own, [Mother] has failed to correct the circumstances that necessitated the juvenile[s'] removal from her care.
26. [Mother] has made minimal progress toward her goals. At the time of the adjudication, [Mother] had a history of housing instability and homelessness and dishonesty, she failed to provide for the juvenile[s'] needs and she failed to protect the juvenile[s] from domestic violence by continuing to have contact with [Boyfriend] These circumstances have not changed.
27. [Mother] continues to have unstable housing. She has had at least 5 different residences since the juvenile[s] [have] been placed in DSS custody, including living in a tent as recent as the summer of 2015. When the juvenile [s] [were] placed in DSS custody, she did not have stable housing for her child [ren] and she still does not have stable housing for her child[ren]. [Mother] has had the means through employment to secure and maintain housing and she has failed to do so.
28. [Mother] has not complied with the recommendations of her psychological evaluation, which included the recommendation for [Mother] to participate in individual counseling to address the problematic aspects of her choices and conduct leading to DSS involvement. She is not receiving the needed individual counseling despite being offered affordable services for treatment.
29. [Mother] has not consistently visited with [the juveniles].... [Mother] has also not shown the ability to properly care for the juvenile[s] during her visits at DSS even though she has completed parenting classes.
30. [Mother] has continued to remain in contact with [Boyfriend] and has not been honest about her contact with him.
Mother challenges portions of findings of fact 25 through 30. The remaining unchallenged findings and portions of findings are deemed to be supported by competent evidence and are binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate Mother's parental rights. See In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006).
Mother argues that the findings misstate the facts and that she substantially complied with her case plan. Mother claims she was employed, had obtained housing, completed parenting classes, attended therapy, and severed ties with Boyfriend. Mother further asserts that DSS failed to meet its burden that there was a probability of future neglect. We are not persuaded.
Mother first disputes that portion of finding of fact 25 in which the trial court found that she had been offered and provided a substantial amount of resources and services towards reunifying her with the children. However, this finding was supported by the testimony of Jacqueline Moran, the social worker assigned to the case, who testified that Mother had been offered assistance with: (1) financial and budgeting strategies to help her with her life skills and manage her money; and (2) developing better interpersonal relationships with others. Ms. Moran further testified that Mother was referred for parenting classes and given opportunities to participate in shared parenting.
In findings 25 and 26, the court found that Mother had failed to complete her case plan and correct the conditions which led to the removal of the juveniles from her care. These findings are also supported by Ms. Moran's testimony. Specifically, Ms. Moran testified that respondent failed to make any progress towards her goal of reunifying with her children, stating that while respondent made "some efforts" towards completing her case plan, "she would not complete a follow-through to the end of any of those things." For example, Ms. Moran learned that Mother had been terminated from her employment for "no-show, no-call[.]" That employment was the only job that Ms. Moran was able to verify during the time that she worked with Mother.
In findings of fact 26 and 30, the court found that Mother continued to have contact with Boyfriend and had not been honest about her contact with him. These findings are supported by the record. Mother testified at the hearing that she could not recall the date that she last saw Boyfriend, but conceded it was after she began attending court in this matter. We further note that in a consent order entered in this matter in June 2015, the trial court found as fact that Mother was speaking to Beth and Dana on the telephone when she allowed Boyfriend to speak with them in violation of a court order. There was also evidence that Mother posted to her Facebook page in November 2014 that she was engaged to Boyfriend. Finally, Mother admitted to visiting Boyfriend while he was in jail.
In finding of fact 27, the court found that Mother failed to maintain stable housing. We find no error in the trial court's finding. Ms. Moran testified that while Mother initially secured housing, she soon was "falling behind in her rent" and about to be evicted. Ms. Moran further testified that since the juveniles have been in DSS's custody, Mother had five known addresses. Moreover, there was evidence that at one point Mother was staying in a tent in the woods. Additionally, at the hearing, Mother testified that she was living with her mother and still did not have independent housing.
In finding of fact 28, the court found that Mother failed to comply with recommendations of her psychological evaluation. This finding is also supported by competent evidence. Ms. Moran testified that Mother did not comply with a requirement to attend individual and family counseling. Mother confirmed that she was not in therapy at the time of the hearing and had only periodically attended therapy prior to the hearing.
Finding of fact 29 regards Mother's inability to properly care for the juveniles during visitation, despite her having completed parenting classes. Ms. Moran testified that Mother failed to demonstrate "any progress or learning ability" from parenting classes. She further testified:
Even as late as the last visit in October of 2015, [Mother] did not demonstrate parenting skills in order to control her children. Her children were having multiple conflicts between each other. I had to intervene on a number of occasions to bring the children back in and try to help them control their anger and frustration. They were being mean to each other and saying mean things and [Mother] was having a lot of difficulty controlling that.
Accordingly, this finding is supported by competent evidence.
III. Conclusion
In summary, although there may have been evidence that Mother complied with some elements of her case plan, we nevertheless conclude there was sufficient evidence to support the trial court's findings of fact. See In re Whisnant , 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) ("[I]t is the trial judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom."). We further conclude that Mother's failures to obtain stable housing and employment, regularly attend counseling, completely separate herself from Boyfriend, and show the ability to parent the juveniles all support the trial court's finding that neglect would repeat should the juveniles be returned to her care. See In re Davis , 116 N.C. App. 409, 413-14, 448 S.E.2d 303, 306 (1994) (upholding finding of a probability of repetition of neglect where the parent failed to obtain counseling, maintain a stable home and employment, and attend parenting classes); see also In re J.H.K. , 215 N.C. App. 364, 369, 715 S.E.2d 563, 567 (2011) ("Relevant to the determination of probability of repetition of neglect is whether the parent has made any meaningful progress in eliminating the conditions that led to the removal of [the] children."). Therefore, we hold that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(1) to terminate Mother's parental rights.
Mother additionally argues that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a) (2), and (3) to terminate her parental rights. However, because we conclude that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to support the trial court's orders, we need not address the remaining grounds found by the trial court to support termination. Taylor , 97 N.C. App. at 64, 387 S.E.2d at 233-34. Accordingly, we affirm the trial court's orders terminating Mother's parental rights.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR., and DIETZ concur.

The orders of the trial court entered 8 April 2016 were amended on 11 May 2016 to correct clerical and typographical errors. Mother has failed to file a petition for writ of certiorari seeking review of the amended orders; however, we elect to treat Mother's appeal as a petition for writ of certiorari in order to address the merits of Mother's appeal. N.C. R. App. P. 21(a).

Pseudonyms.

Although the parental rights of the juveniles' father were terminated in the same orders, he has not appealed and is not a party to this appeal.